OPINION OF THE COURT
Patrick Henry, J.
*640 This postjudgment motion by the plaintiff for a money judgment in the amount of $73,000, together with interest and costs, representing a maintenance obligation the defendant has failed to pay, is granted.
While the parties were still married, they jointly executed a promissory note to Long Island Savings Bank in the sum of $160,000 in return for a loan to be used in defendant’s business.
As part of the parties’ separation agreement entered into in November 1990, the defendant promised to hold the plaintiff harmless from liability on this note.
The separation agreement was incorporated by reference in, but not merged with, the judgment of divorce entered in February 1994.
In December 1992, Long Island Savings obtained a judgment against the plaintiff on the note in the approximate sum of $179,000, which the plaintiff settled and satisfied, in May 1994, for $81,000. She then sought reimbursement from the defendant. Although he denied liability for the judgment, he did "help” her to the extent of $8,000, leaving unreimbursed the sum of $73,000.
In opposition to plaintiff’s instant motion, the defendant advises that, in 1993, he filed for bankruptcy and was discharged of all his debts, including the $160,000 note. Accordingly, he concludes, the hold harmless promise to the plaintiff was likewise forgiven. He claims that, although the plaintiff was not listed as a creditor in the bankruptcy proceeding and she was never formally notified of it, she had actual knowledge, but neglected to assert any claim. Thus, says the defendant, under bankruptcy law, any debt deriving from the note has been discharged.
In reply, the plaintiff counters that defendant’s debt to her— not to the bank — was not discharged in bankruptcy because (1) it was functionally marital maintenance; and (2) the defendant had induced her to sign the note by fraudulent misrepresentations.
We address first whether defendant’s hold harmless obligation can be construed, on this record, as functionally maintenance, as a matter of law and fact.*
A debt owed "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such *641 spouse or child, in connection with a separation agreement” is not dischargeable in bankruptcy (11 USC § 523 [a] [5]). This provision represents a departure from the general policy of giving a debtor a "fresh start” following the bankruptcy and prefers instead the overriding public policy favoring the enforcement of family obligations (In re Sternberg, 85 F3d 1400 [9th Cir 1996]). Accordingly, the party objecting to discharge bears the burden of proving nondischargeability (In re Gianakas, 917 F2d 759 [3d Cir 1990]).
An obligation in the nature of maintenance or support is not dischargeable, but a property settlement is (In re Brody, 3 F3d 35 [2d Cir 1993]). The ultimate issue is the parties’ intent at the time they entered into the matrimonial settlement agreement (In re Gianakas, supra).
In the appropriate factual settling, an obligation to pay a second mortgage on the former marital residence may be a debt in the nature of maintenance or support (see, In re Gianakas, supra) and so may a "hold harmless” obligation (In re Robinson, 921 F2d 252 [10th Cir 1990]).
The seminal analysis of this dischargability issue is found in In re Gianakas (supra, at 762-763):
"We believe that whether an obligation is in the nature of alimony, maintenance or support, as distinguished from a property settlement, depends on a finding as to the intent of the parties at the time of the settlement agreement * * * That intent can best be found by examining three principal indicators. The many other factors referred to by various courts are merely elements of these indicators.
"First, the court must examine the language and substance of the agreement in the context of surrounding circumstances, using extrinsic evidence if necessary * * * However, it is likely that 'neither the parties nor the divorce court contemplated the effect of a subsequent bankruptcy when the obligation arose’ * * * Therefore, the parties and the state courts may not have focused on whether a particular obligation was to serve as support or a property settlement unrelated to support * * * [E]ven an obligation designated as property settlement may be related to support because state courts often will adjust alimony awards depending on the nature and amount of marital assets available for distribution * * * In fact, 'property division often achieves the same goal as alimony, i.e., support’ * * *
"Because the language of the agreement alone may not provide a sufficiently conclusive answer as to the nature of an *642 obligation, the second indicator to which we must look to assist in ascertaining the parties’ intent is the parties’ financial circumstances at the time of the settlement. The facts that one spouse had custody of minor children, was not employed, or was employed in a less remunerative position than the other spouse are aspects of the parties’ financial circumstances at the time the obligation was fixed which shed light on the inquiry into the nature of the obligation as support * * *
"Third, the court should examine the function served by the obligation at the time of the divorce or settlement. An obligation that serves to maintain daily necessities such as food, housing and transportation is indicative of a debt intended to be in the nature of support.”
This opinion and the one in In re Brody (supra) remain the accepted standard in the field (see, e.g., Fraser v Fraser, 196 Bankr 371 [ED Tex 1996]; In re Dressier, 194 Bankr 290 [RI 1996]; In re Clegg, 189 Bankr 818 [ND Okla 1995]; In re Appling, 186 Bankr 1013 [ND Ga 1995]).
We turn now to a review of the record evidence, which consists of the documentary proof and the parties’ sworn statements, but not the arguments of counsel.
The plaintiff contends that, at the time of the separation agreement — November 1990 — the defendant was grossing $300,000 to $310,000 annually; she was averaging $17,000 to $18,000 a year from her part-time bookkeeping business; and thus she clearly would have been entitled to maintenance under prevailing law. In addition, she maintains that she and the defendant had an express oral understanding that she was waiving maintenance in return for the indemnification agreement.
According to the defendant, he was in dire financial straits when the separation agreement was signed and could not have afforded maintenance. Thus, he argues, plaintiffs "waiver” of maintenance was no more than recognition that maintenance was simply not doable. Moreover, if there was any quid pro quo for waiving maintenance, he says, it was his conveyance to the plaintiff of his interest in the marital residence.
As for the written agreement, that document says the plaintiff did waive maintenance, which supports, on its face, plaintiffs position. On the other hand, the indemnification promise was inserted in the equitable distribution article, suggesting it was in the nature of a property settlement rather than marital maintenance.
*643 Defendant’s argument that the promise to indemnify could not have been intended to substitute for maintenance because he could not afford maintenance is not logical. On the contrary, his inability to pay maintenance calls out for an acceptable substitute. The record indicates that, as Brody (supra) suggests, the parties did not, at the time they signed the separation agreement, contemplate the effect of the subsequent bankruptcy. Thus, we accord little weight to the structure of that agreement.
We hold that, as a matter of law, defendant’s promise to indemnify was in the nature of maintenance and/or support, and thus that obligation was not discharged in the bankruptcy proceeding.
Settle a money judgment on 15 days’ notice in the sum of $73,000, together with appropriate interest, costs and statutory disbursements.

 We have examined carefully the parties’ subordinate procedural contentions and find them meritless.